**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| EDWARD BERNARD MITCHELL,           ) | |
| )                                                                 | |
| Plaintiff,           ) | |
| )                                                                 | C.A. No.: 2:04-2237-PMD-RSC |
| v.                                                       ) | |
| )                                                                 | |
| SECRETARY VETERANS AFFAIRS,    ) | ORDER |
| )                                                                 | |
| Defendant.           ) | |
| _____) | |

Plaintiff Edward Bernard Mitchell ("Mitchell") filed this action for termination of his employment on the basis of race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and for retaliation pursuant to § 704(a) of Title VII. Mitchell sues Anthony Principi, the Secretary of the Department of Veteran Affairs, for the alleged discrimination and retaliation he suffered while employed in the Surgical Intensive Care Unit ("SICU") at the Ralph Johnson VA Medical Center in Charleston, South Carolina. Defendant moved for summary judgment on April 3, 2006. On June 28, 2006, a United States Magistrate Judge issued a Report and Recommendation ("R&R"), made in accordance with 28 U.S.C. § 636 (b)(1)(B), which recommended that summary judgment be granted. A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Mitchell has filed timely objections to the R&R.

## BACKGROUND

The facts, either undisputed or presented in a light most favorable to Mitchell, are as follows:

In August of 1999, Nurse Manager Letha Rogers ("Rogers"), a black female, interviewed

and hired Mitchell, a black male, to work as a temporary probationary employee[1] in the SICU at the Ralph Johnson VA Medical Center. Mitchell's temporary appointment was for a period not to exceed thirteen months and could be terminated at any time up to the expiration date of the appointment. Mitchell's duties as a R.N. in the SICU included monitoring patients, giving drugs, and reporting to the doctors. After a month of initial orientation, Mitchell worked the night shift, from 7 p.m. until 7 a.m. After three weeks on the night shift, Mitchell observed that the two charge nurses who worked weekends, Bill McMaster, a white male, and Kathy Bunting, a white female, "wouldn't do anything for the patients . . . [t]hey were abusive to the patients." (Pl. Dep. pp. 65-66.) Mitchell reported his concerns to Rogers.[2] Mitchell is unaware of any investigation into his reports and is unaware if any counseling or discipline resulted from his reports. He believes, however, that Rogers did nothing to remedy the situations he reported.

In June of 2000, Mitchell approached Rogers, and told her that he felt that the white nurses could get away with anything because of their race, and that he felt that this was racist. Rogers did not respond to Mitchell's concern. Three weeks later, Mitchell received a letter notifying him that he was being terminated as of July 21, 2000, months before the end of his contract. (Termination

---

[1] If Mitchell had finished his temporary assignment and been rehired for another temporary assignment, he would have been considered a permanent federal employee. Temporary assignments can last up to five years. (Pl. Dep. pp. 135-36.)

[2] Specifically, Mitchell reported to Rogers three major events of patient mistreatment by McMaster: (1) McMaster threatened a patient, Mr. Pie, who was combative and had scratched or pushed McMaster, and possibly Kathy Bunting. McCaster told Pie, "If you do that again, I'm gonna beat your ass." (Pl. Dep. pp. 72-75.) (2) During an emergency, McMaster did not let a patient onto SICU because he wanted him to go to the Medical Intensive Care Unit ("MICU"). The patient did not die as a result of the delay, but Mitchell believed that the patient could have died. (Pl. Dep. pp. 76-79.) (3) McMaster pushed a patient down on the bed even though the patient had a Swan-Ganz type catheter in his heart which made pushing the patient dangerous. (Pl. Dep. pp. 80-83.)

letter 7-7-00.) The letter did not state a reason for the termination, but noted that Mitchell had been "advised of the facts about temporary appointments and that [his] appointment was subject to termination at any time." (Id.) When Mitchell received the letter, he demanded to know the reason behind the decision. At that time, Rogers told Mitchell that he was being terminated because his "skills were substandard." (Pl. Dep. p. 101.) Mitchell refused to sign the letter and Rogers noted that he "wants more documentation for reasons he is being fired." Accordingly, on August 29, 2000, Rogers wrote a Proficiency Report summarizing Mitchell's performance. She noted that although Mitchell "demonstrated skillful customer service abilities," he "was counseled various times concerning patient care issues such as not taking off orders resulting in medication error, failure to accurately document urine output on a GU patient with a CBI infusing and administering sedation after an order was discontinued." (Proficiency Report 8-29-00.) The Report concluded that Mitchell's "critical care skills were lacking knowledge and performance." (Id.) Rogers ranked Mitchell's performance as "low satisfactory" and Sarah Williams, the Associate Chief of Nursing and Patient Care, concurred in Roger's assessment. (Id.)

There are five instances cited by Defendant and uncontested by Mitchell, in which Mitchell's work performance was found to be deficient: (1) Mitchell admitted that, in December 1999, he delayed admitting a patient to SICU for an hour, even though he knew the doctor had ordered the transfer. (2) Mitchell admitted that, in February 2000, he failed to notify the chief resident of an intern's indecisive action which may have contributed to the patient's death. Mitchell also admitted that two weeks later he was counseled on being the patient's advocate in this type of situation. (3) Mitchell admitted that on May 22, 2000, he gave 10 milligrams of the drug Versed to a patient without a doctor's order. Following this medication error, the patient had a stroke and died. (4)

Mitchell acknowledged that on May 24, 2000, he failed to properly document continued bladder irrigation and urine output on one patient. (5) Mitchell admitted that patient Pie's doctor had ordered that Pie's NG tube should not be manipulated without calling the doctor. Plaintiff also admitted that, in disregard of this direct order, he replaced Pie's NG tube on June 14, 2000, and he did not document that the intern was present.

On July 6, 2004, Mitchell filed a cause of action in this court, alleging that the termination of his employment was on the basis of race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* and for retaliation pursuant to § 704(a) of Title VII.

## STANDARD OF REVIEW

### A.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews de novo those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1)(c).

### B.     Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## OBJECTIONS

After consideration of the facts supported by the evidence, the Magistrate Judge recommended in his R&R that Defendant's motion for summary judgment be granted. The Magistrate Judge found that the evidence taken in a light most favorable to Plaintiff showed him to have been a temporary employee who performed below his employer's reasonable expectation; accordingly, he found that Plaintiff had not proven essential elements of his disparate treatment or retaliation claim.

Mitchell cites three objections to the R&R: (1) the Magistrate Judge failed to mention that Defendant agreed to withdraw its asserted defense of issue preclusion; (2) the Magistrate Judge erred in finding that the record does not present genuine issues of material fact as to the claim for disparate treatment discrimination; and (3) the Magistrate Judge failed to address his retaliation claim.

5

**(1)     Plaintiff objects that the Magistrate Judge erred in failing to mention that Defense counsel withdrew the defense of issue preclusion and judicial estoppel at the hearing of this matter**.

The court finds that this objection is without merit. The Magistrate Judge stated in footnote two on page eight of the R&R that "Defendant withdrew [the defense of issue preclusion] at oral argument." (R&R at 8.) As such, the Magistrate Judge correctly noted that the defense of issue preclusion and judicial estoppel was no longer before the court and did not refer to or rely upon this defense in reaching his recommendation that summary judgment be granted.

**(2)     Plaintiff objects that the Magistrate Judge erred in finding that the record does not present a genuine issue of material fact as to his claim for disparate treatment.**

Plaintiff asserts that the Magistrate Judge erred by failing to accept the facts and draw all inferences in a light most favorable to Plaintiff. Specifically, Plaintiff claims that the Magistrate Judge "simply [left] out Plaintiff's testimony and that of his supervisors concerning his [good] work performance" and failed to consider other "evidence from which a reasonable juror could find that he had not acted incompetently in any of the scenarios raised by the Defendant." Plaintiff further objects that the Magistrate Judge did not address the issue of disparate treatment other than to simply conclude that there was no evidence of it.

Mitchell premises his disparate treatment in discharge claim on his assertion that white nurses also violated hospital policies but escaped discipline and discharge. To establish a prima facie case for disparate treatment claim under Title VII, the plaintiff bears the initial burden of proving by a preponderance of the evidence: (i) that he belongs to a racial minority; (ii) that he was qualified for his job and performing his work at a level which met his employer's reasonable expectations; (iii) that he was discharged; and (iv) other similarly situated employees who were not

members of the protected class were not discharged. *Taylor v. Virginia Union University,* 193 F.3d 219, 233 (4th Cir. 1999); *see also Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 133 (4th Cir. 2002). If the plaintiff makes this showing, he has established a rebuttable presumption of unlawful discrimination. *McDonnell-Douglas*, 411 U.S. at 802. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant provides such an explanation, no presumption of discrimination remains, and the burden shifts back to the plaintiff. The plaintiff must then have an opportunity to prove that the legitimate reasons offered by the defendant were not its true reasons, and were a pretext for discrimination. *Burdine*, 450 U.S. at 253.

In this case, it is uncontested that Plaintiff is a member of a minority, and that he was discharged; however, the Magistrate Judge found that the "evidence taken in the light most favorable to the plaintiff shows him to be a temporary employee, who performed below his employer's reasonable expectation." (R&R at 19.) The R&R also stated that Plaintiff "has no basis to know, and does not actually know, if any [white] nurses were counseled or disciplined as a result of his numerous complaints to" his supervisor. (R&R at 10.) As such, although he does not explicitly state that this is his reasoning, the Magistrate Judge found that summary judgment is appropriate because Plaintiff failed to present evidence supporting factors two and four of a prima facie case of disparate treatment. Plaintiff objects to both of these findings.

### A.    Work Performance

Plaintiff claims that he has presented a genuine issue of material fact that his work was satisfactory. Plaintiff submitted the affidavits of two supervising nurses who worked with Plaintiff

7

at the VA Medical Center, Stanley Greenwald and Linda Williams. Both of these supervising nurses testified that Plaintiff "perform[ed] his duties competently," "was a hard worker and responsible and took good care of his patients and followed the regulations of the VA." Plaintiff claims that the testimony in these affidavits raises genuine issues of material fact regarding whether his work was satisfactory. Because on a motion for summary judgment all evidence must be considered in the light most favorable to Plaintiff, Plaintiff argues that it was error for the Magistrate Judge to find that he had not presented sufficient evidence that his work performance was satisfactory.

As an initial matter, the court notes that although the plaintiff's burden at this stage is "not onerous," it nevertheless requires him to "prov[e] by the preponderance of the evidence a prima facie case of discrimination." *Warch v. Ohio Cas. Ins. Co.,* 435 F.3d 510, 515 (4th Cir. 2006) (citing *Burdine*, 450 U.S. at 252-53); *Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004) (" '[T]he plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence.' ") (quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996)). "And, because a plaintiff must show by a preponderance of the evidence that he met the employer's legitimate job expectations to prove his prima facie case, the employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations." *Warch,* 435 F.3d at 516. To require otherwise would turn the plaintiff's burden at the prima facie stage into a mere burden of production, making it "difficult to imagine a case where an employee could not satisfy the 'qualified' [or legitimate expectation] element. . . ." *Id.* (citing *Nizami v. Pfizer Inc*., 107 F. Supp. 2d 791, 801 n. 11 (E.D. Mich. 2000)). Accordingly, the court considers both the evidence presented by Mitchell and the evidence presented by Defendant in determining whether Mitchell has shown that he met his employer's legitimate performance

8

expectations.

Considering all the evidence, the court finds that the Magistrate Judge did not err in finding that Mitchell failed to raise a genuine issue of material fact supporting his contention that his work performance was satisfactory. Defendant asserts that Mitchell failed to meet reasonable expectations, and cites five documented instances in which Mitchell violated hospital policy. In these five instances, it is uncontested that his performance was substandard, and failed to meet his employer's reasonable expectations. In the affidavits referred to by Mitchell, neither Mr. Greenwald nor Ms. Williams address these instances of substandard performance. The court further notes that according to their affidavits, neither Mr. Greenwald nor Ms. Williams worked directly with Mitchell in the SICU. Mr. Greenwald was a respiratory technician in the MICU with limited interactions with Mitchell, and Ms. Williams worked the day shift in the SICU, while Mitchell worked the night shift.[3] Accordingly, while they both testified that they had an "opportunity to observe his performance as a nurse" and found him to "be competent and performing his duties competently," their observations of his work performance were necessarily more limited than that of his Nurse Manager. As such, viewing the evidence in the light most favorable to Mitchell, the court concludes that no reasonable jury would find that he was meeting Defendant's legitimate performance expectations. Therefore, the court finds that the Magistrate Judge did not err in finding that Mitchell failed to establish a genuine issue of material fact regarding his good work performance.

### B. Disparate Treatment

Plaintiff also objects that he has presented a genuine issue of material fact that other similarly

---

[3] The court notes, however, that Ms. Williams and Mitchell did work the day shift together for about four weeks before Mitchell went to the night shift.

situated white employees were treated more favorably. Plaintiff relies on his own affidavit as well as the affidavits of Mr. Greenwald and Ms. Williams who both testified that, despite Plaintiff's reporting on white nurses, including Bill McMasters and Kathy Bunting, for violations of VA policy, "nothing to [their] knowledge was done." Ms. Williams also testified that Plaintiff complained to his supervisor about the conduct of nurses who had been hired after him and that "to [her] knowledge nothing was ever done to correct the situations [Plaintiff] reported." Plaintiff also refers to his own affidavit wherein he asserts that "McMasters held a patient up fro[m] coming into the SICU, and was not reprimanded." As such, Plaintiff asserts that he has presented evidence raising a genuine issue of material fact that white nurses who violated hospital policy were treated more favorably than he was treated.

First, the court notes that the affidavits of Mr. Greenwald and Ms. Williams do not constitute evidence that white nurses were treated more favorably. Mr. Greenwald testified only that "*Mr. Mitchell informed me* that Ms. Rodgers did not pay attention to [his complaints regarding the white nurses] and nothing was done." As such, Mr. Greenwald does not testify as to his own personal knowledge regarding the events in this case, but only recites the version of events told to him by Mitchell. Similarly, Ms. Williams testified that Mitchell "complained to me about the employees who were not helping him and who would spend most of their shift on the internet . . . . [*Mitchell*] *told me that he had also reported them to the Nurse Manager*. To my knowledge nothing was ever done to correct the situations [Mitchell] reported." As such, neither Mr. Greenwald nor Ms. Williams testified that they had personal knowledge of either the alleged infractions by white nurses or the disciplinary actions taken to remedy these alleged infractions.

The court further notes that Mitchell has not shown that the white nurses that allegedly were

10

not disciplined for their violations of hospital policy were "similarly situated" for purposes of determining disparate treatment. To be "similarly situated," the individuals with whom Mitchell attempts to compare himself must be similarly situated in all material aspects. *Shumway v. United Parcel Service, Inc*., 118 F.3d 60, 64 (2d Cir. 1997) (finding that individuals were not similarly situated to plaintiff where individuals had not engaged in same misconduct). Mitchell admits that he does not know of any other probationary employee who had violated hospital policy or received allegations of bad patient care and had not been disciplined or discharged.[4] (Pl. Dep. p. 150.) Similarly, Mitchell has no first hand knowledge as to whether and under what circumstances *any* other SICU nurses were ever disciplined. (Pl. Dep. pp. 109, 110, 150.) Accordingly, the court finds that Mitchell has not presented evidence that other similarly situated employees who were not members of the protected class were treated more favorably under similar circumstances. Therefore, Mitchell has not presented a prima facie case of disparate treatment, and the Magistrate Judge correctly found that Defendant's motion for summary judgment on this claim should be granted.

**(3)     Plaintiff objects that the Magistrate Judge erred in failing to discuss his retaliation claim**.

Mitchell contends that he did forecast sufficient evidence to establish a "very strong claim" of retaliation under Title VII and that the Magistrate Judge erred by recommending that summary judgment be granted as to all causes of action without addressing the issue of retaliation at all.

To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that he engaged in protected activity, (2) that an adverse employment action was taken against him, and (3) that there was a causal link between the protected activity and the adverse employment action

---

[4] It is uncontested that Bill McMaster and Kathy Bunting were permanent employees, not probationary employees like Mitchell.

*See Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.), *cert. denied,* 519 U.S. 818 (1996). Under the burden-shifting scheme, if Plaintiff succeeds in proving a prima facie case, the burden of going forward shifts to Defendant to provide evidence of a legitimate non-discriminatory reason for taking the adverse employment action. *See, e.g., Matvia v. Bald Head Island Manag.,* 259 F.3d 261, 271 (4th Cir. 2001); *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir. 2000). Should Defendant articulate a non-discriminatory reason, the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered reason is a pretext for retaliation. *Smith,* 202 F.3d at 248. To do so, Plaintiff must demonstrate, through either direct or circumstantial evidence, "*both* that the [proffered nondiscriminatory] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). In applying *St. Mary's,* the Fourth Circuit has held "that to survive a motion for summary judgment under the *McDonnell Douglas* paradigm the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." *Vaughan v. The Metrahealth Cos.,* 145 F.3d 197, 202 (4th Cir. 1998); *Smith*, 202 F.3d at 249. As such, in order to avoid summary judgment, Plaintiff must present some evidence, either direct or circumstantial, that Defendant's stated reason for terminating Plaintiff was a pretext for retaliation.

In this case, it is undisputed that Mitchell suffered an adverse employment action and therefore satisfies the second requirement of the prima facie case: He was terminated. *See Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 775 (4th Cir. 1997) (noting that termination is an adverse employment action). It is further undisputed that, three weeks before his termination, Plaintiff told

12

his supervisor, Ms. Letha Rogers, that "he felt that the white nurses could get away with anything because of their race, and that he felt that this was racist."[5] (Pl. Response to Mot for SJ.) He asserts that this complaint to Ms. Rogers constituted activity protected under Title VII,[6] and that, because he was terminated only three weeks after the complaint, a causal connection exists between the protected activity and the termination. In order to prove a causal connection based on temporal proximity *alone,* the time between the protected activity and the adverse employment action must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001); *Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir. 1986) (protected activity must be "closely followed by adverse actions," and one-month period was sufficient to make out a prima facie case of retaliation.). Because the adverse employment action occurred only three weeks after the alleged protected activity, there is a genuine issue of material fact as to whether a causal connection exists between the two events. The court therefore finds that Plaintiff presented evidence supporting all three elements of a prima facie case of retaliation.

The R&R specifically addresses Plaintiff's retaliation claim in only one paragraph in the

---

[5] In his affidavit, Plaintiff describes the alleged protected activity as follows: "I went to Ms. Rogers. I told her that because Bill (McMasters) is white and I'm black, you allow him to get away with anything. I said Letha, you are not going to do anything to him. I said, 'This is discrimination, Letha.'"

[6] The Fourth Circuit defines protected opposition activity as activity that "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinion in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro Wash. Airport Auth.*, 149 F.3d 253 (4th Cir. 1998); *Kubicko*, ("[A]s long as an employee complains to his or her employer or participates in an employer's informal grievance procedure . . ., the employee's activities are entitled to protection under [Title VII]'s opposition clause."). Given that Plaintiff made a specific complaint to his supervisor in which he expressed his belief that he was being subjected to racial discrimination, a genuine issue of material fact exists as to whether Plaintiff's informal complaint to Ms. Rogers was protected opposition activity.

13

Facts section: "Plaintiff's retaliation claim is that he accused Rogers of racial discrimination because plaintiff believes that Rogers did not punish McMasters for holding up a coding patient from coming into the SICU. As a result of this accusation, plaintiff was thereafter terminated, according to the plaintiff. Plaintiff claims his complaint to Rogers that Rogers discriminated on the basis of race is activity protected under Title VII." (R&R at 18.) Although Mitchell presents evidence supporting a prima facie case of retaliation, the Discussion section of the R&R does not mention Plaintiff's retaliation claim and articulates no reason for summarily finding that "no issue of genuine material fact" exists regarding this claim. As such, the court agrees with Plaintiff that the R&R does not adequately address the retaliation claim.

Rather than remanding the matter to the Magistrate Judge, the court now considers whether Defendant has provided evidence of a legitimate non-discriminatory reason for terminating Mitchell and, if so, whether Mitchell has demonstrated that Defendant's proffered reason is a pretext for retaliation.[7] *See, e.g., Matvia v. Bald Head Island Manag.,* 259 F.3d 261, 271 (4th Cir. 2001). Defendant asserts that Mitchell was discharged for his substandard performance on the job. Defendant points to the five admitted instances in which Mitchell was counseled or disciplined for his violations of hospital policy. His supervisor, Ms. Rogers, reported that his "critical care skills were lacking knowledge and performance" and "after initiatives to correct these deficiencies were

---

[7] Mitchell also argued in his opposition to the motion for summary judgment that it would be error for the court to consider the burden shifting scheme at the summary judgment stage. He asserts that the shifting burden test should be treated as an "affirmative defense," such that "even a successfully proven asserted non-discriminatory reason for an adverse employment action would not call for the dismissal of the case." (Pl. Opp. to Sum. Jud. at 23.) However, the Fourth Circuit has clearly held that the "summary judgment standards mesh comfortably with the *McDonnell Douglas* framework." *Hux v. City of Newport News, Va.,* 451 F.3d 311, 315 (4th Cir. 2006). Therefore, the court may consider whether a plaintiff has successfully satisfied the burden-shifting scheme when considering a motion for summary judgment.

14

unsuccessful, Mr. Mitchell was released from duty." (Proficiency Report 8-29-00.) Defendant's legitimate, documented concerns with Mitchell's work performance constitute nondiscriminatory reasons for terminating Mitchell's temporary position. As such, in order to avoid summary judgment, Mitchell must come forward with evidence that those reasons were a mere pretext for discrimination. *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir. 2000).

Although Mitchell does not deny that he committed the five infractions cited above, he argues that these nondiscriminatory reasons for his termination were pretextual because the termination letter did not list substandard performance as the reason for termination. Mitchell asserts that the termination letter cited "fluctuating staffing needs" as the reason for his termination, and Defendant only cited his substandard performance as the reason for his termination *after* he had filed a complaint with the EEO. Because Defendant allegedly changed positions regarding the reason for his termination, Mitchell asserts that the claim that his work performance was inadequate was merely a cover-up for Defendant's retaliatory motive. This is clearly not the case, however, as the termination letter cites no reason for the termination. As such, Mitchell has presented no evidence that Defendant ever was inconsistent or changed his reasons for terminating Mitchell's temporary employment. Further, the court notes that "once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News, Va.,* 451 F.3d 311, 315 (4th Cir. 2006). The former would not create a "genuine" dispute, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), the latter would fail to be "material," *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In this case, the fact that the

termination letter did not specify that Mitchell's poor work performance was the reason for the termination does not cast doubt on the explanation's validity.

The court concludes that Mitchell has not introduced sufficient evidence to satisfy his burden of demonstration that Defendant's proffered legitimate reason for terminating him was false and pretext. *Combs-Burge v. Rumsfeld*, 170 Fed.Appx. 856 (4th Cir. 2006). Mitchell's assertion that Defendant's reasons for terminating him were false is not sufficient to avoid summary judgment on his retaliation claim. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569 (7th Cir. 2003) (to avoid summary judgment in favor of employer on his age discrimination claim based on failure to show pretext, vice president had to do more than simply allege that employer's executives were lying about their real reason for terminating him; he had to point to specific facts sufficient to cast doubt on legitimate restructuring and financial reasons offered by employer, or which raised doubts as to credibility of executives' testimony). Accordingly, the court finds that Mitchell's retaliation claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Anthony Principi's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**December 11, 2006.**